

Glenn B. Allyn
*Pro Se, Plaintiff*
67 Tower Road
Hangar T
West Harrison, New York 10604
(914)437-5051
gba@flyingzebra.com

# 20cv2953

*UNITED STATES DISTRICT*
*COURT FOR THE SOUTHERN DISTRICT OF NEW YORK*

| | | |
|---|---|---|
| | X | *Civil Action:* |
| GLENN B. ALLYN | : | *No:* |
| | : | |
| *Plaintiff,* | : | *Filed:* 04/  /2020 |
| - *against* - | : | |
| | : | *COMPLAIT* |
| *CHARLES WHITE, JONATHAN HOLLAR,* | : | *JURY TRIAL DEMANDED* |
| *HERA FLIGHT, HERA GROUP, HERA* | : | |
| *ENTERPRISES and MIDSOUTH SERVICES, INC.* | : | *Judge:* |
| | : | |
| *Defendants.* | : | |
| | X | |

The plaintiff *Pro Se* complaining of the defendants, alleges as follows:

## NATURE OF ACTION

(1)  This is a breach of contract claim by plaintiff against all defendants.

(2)  This is also a claim against defendants White and Hollar for their conversion of company monies due to the plaintiff stolen by defendants' Hollar and White, and the unjust enrichment.

(3)  Plaintiff claims an action to recover damages for breach of fiduciary duty and declaratory relief against defendants' Hollar and White, in connection with the systematic corporate

mismanagement and intentional disenfranchisement of the minority stockholder of Sea to Sky Air, Inc., ("Company") the plaintiff.

(4)   Plaintiff also claims that Hollar and White are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

### *JURISDICTION*

(5)   Jurisdiction is premised on 28 U.S.C. Section 1332, diversity of citizenship of the parties and an amount in controversy exceeding $75,000.00.  No defendant is a citizen of the same State as the plaintiff.

(6)   There is also jurisdiction over plaintiff retaliatory termination cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), pursuant to the court's federal question jurisdiction, under 28 U.S.C. section 1331.

### *PARTIES*

(7)   The plaintiff, Glenn B. Allyn ("G. Allyn") is a domiciliary in the State of New York with an address of 14 Crescent Drive, Elmsford, New York 10523.

(8)   The defendant Charles White is a domiciliary in the State of Florida Having a business address of 4110 Centerline Lane, Sanford, Florida 32773.

(9)   The defendant Jonathan Hollar is a domiciliary in the State of Florida Having a business address of 4110 Centerline Lane, Sanford, Florida 32773.

(10) Upon information and belief, the defendant Hera Flight, Inc., Hera Group, and Hera Enterprises (collectively "Hera") are each a corporation, entity recognized as a business by the State of Florida, and with its principal place of business located at 4110 Centerline Lane, Sanford, Florida 32773.

(11) Upon information and belief, the defendant Midsouth Services, Inc. ("Midsouth") is a corporation, entity recognized as a business by the State of Florida, and with its principal place of business located at 611S Fort Harrison Ave. STE 388 Clearwater, Florida 33756.  Midsouth is the owner of a Piggio P-180II aircraft N197MS ("N197MS").

## *FACTS COMMON TO ALL CAUSES OF ACTION*

(12) Defendants White and Hollar when in control of the Company failed to manage the Company in a way that would maximize value for plaintiff shareholder, repeatedly taken actions designed to entrench themselves in the Company, intentionally mislead plaintiff/shareholder and the FAA regulators.  Conducted activities to divert corporate funds to other companies White and

Hollar own and/or have interests in, including defendant Hera Flight and its related entities, and subsidiaries.

In doing so, defendants White and Hollar breached various fiduciary duties owed to plaintiff/minority shareholder and by such conduct by defendants, thereby damaged plaintiff.

(13) Because the Sea to Sky corporate entity at all relevant times was a closely held entity, White and Hollar had high standards and fiduciary responsibilities owed to the minority shareholder, which they have breached and all to the detriment and damage to the minority shareholder, plaintiff.

(14) White and Hollar as set forth above have acted in fiduciary breach and with motives intended to harm the minority shareholder and enrich their selves at the Companies' expense, and retaliated against plaintiff for his intentions to advise the FAA of White and Hollar's acts and the Company FAA part 135 Air Carrier certificate potential violations.

(15) White and Hollar's bad conduct and potential FAA violations was brought to plaintiff's attention by a client plaintiff brought to the company and for whose plane was on the companies underlying part 135 certificate, N416GP.

(16) It came to plaintiff's attention that both White and Hollar, had over billed this client, potentially falsified FAA

records for this aircraft, stolen property from the aircraft and filed an illegal lien under the company's name.  All without any knowledge of plaintiff, and/or plaintiff's consent.

(17) Upon finding this out plaintiff immediately questioned White and directed White to remove the Company lien and impeding corporate liability and personal liability of plaintiff from a lawsuit by this aircraft owner.

(18) White admitted conducting such actions without plaintiff's knowledge and admitted to this mistake and apologized for such conduct.

(19) Plaintiff made it clear at this time that he was investigating this and that if anything like this came up, until plaintiff was bought out and the agreement rectified and changes made to the operation to protect against FAA violations, that plaintiff would voluntarily disclose such future findings to the FAA under their voluntary disclosure, and self-reporting process.

(20) As is set forth below in more particular detail, at such time on the corporate records and with Florida department of corporations, plaintiff was president of the company, the registered agent and the only director of Sea to Sky. *See* Exhibit A.

(21) The FAA after this, or soon thereafter was auditing the Company and had concerns as to White and Hollar's alleged ownership of the company.

(22) On or about April 10, 2019, without a corporate meeting vote or notice to plaintiff, plaintiff was removed as a director, president, agent and made secretary of the company. *See* Exhibit B.

(23) This act by White and Hollar, through corporate counsel was to de fraud the FAA and mislead the FAA into thinking that White and Hollar were actual directors and owners, when White and Hollar knew that they were not as plaintiff had not be paid his expenses and time as agreed to effectuate a transfer.

(24) Had plaintiff been questioned by the FAA, which White and Hollar sought to prevent by falsifying the Florida department of corporation's filings, plaintiff would have made it clear that the transfer to White and Hollar was void because the agreed upon and underlying contract consideration had not been paid.

(25) Thereafter, plaintiff pushed White to pay the consideration which for the sake of settlement only was in an amount of $125,000.00.   White agreed and promised to pay this amount by May 1, 2019, as he knew plaintiff was using this money in a company, he had in New York to add an aircraft to that company.

(26) Plaintiff also made it clear to White at this time, that

he was unhappy with how White and Hollar were adding aircraft to
Sea to Sky, hiring of unqualified pilots and other record keeping
and actions (such as pilot duty time violations) that plaintiff
would investigate further if the monies were not paid and White
and Hollar did not buy the company as was discussed for the payment
of the owed $125,000.00, and payment of an additional $100,000.00
over time and other consideration discussed.

(27) Plaintiff just before, and on and around April 25, 2019
was concerned that White would not live up to his promise to pay
the $125,000.00 on May 1, 2019, and began to request corporate
records and other information in order to meet with the FAA
and make voluntary disclosures regarding the company and proceed
to get back the company in his name only and to act once again as
a director of operations, so as to have knowledge of the daily
operations of the company in order to be compliant with federal
regulations and not jeopardize losing clients like the lear 60
aircraft owner.

(28) Prior to May 1, 2019, plaintiff gave White notice that if
he defaulted in payment of the $125,000.00 on May 1, 2019,
plaintiff would immediately make arrangements to meet with the FAA
and plaintiff sent White a proposed letter requesting this meeting
with the FAA from plaintiff.

(29) White and Hollar defaulted on payment on May 1, 2019, at this point plaintiff notified White that he had no option, that as an owner, and in the best interests of the Company and its clients, that he would send the final version of his letter requesting a meeting with the FAA and that both Whites and Hollar's interest in the Company were void, and that all stock be surrendered to plaintiff.

(30) On or about May 2, 2019 Plaintiff sent that letter to the FAA in respect to the above and his concerns about White and Hollar. *See* Exhibit C

(31) Plaintiff, had an obligation both as a shareholder of the corporation to the Company and its clients to disclose to the FAA, to take control of the Company and to correct any dishonest and illegal actions conducted by White and Hollar.

(32) Neither White or Hollar produced any Company documents and/or bank statements after repeated request for Company documents, including bank statements by plaintiff.

(33) At or around this time, again without notice or formal meeting and without considering the best interests of the Company and/or protecting the minority shareholder, White and Hollar by the Sea to Sky corporate attorneys secretly held a board of directors meeting starting the termination of plaintiff's

employment from the Company and removing plaintiff power to act as
any agent of the Company with the FAA. See <u>Exhibit D</u>.

(34) As a result of the duty by plaintiff, and White and Hollar's
desire to continue to conceal and defraud both the FAA and the
Company's clients, White and Hollar terminated plaintiff's
employment and sent a letter from the corporate counsel indicating
plaintiff must immediately withdraw this letter to the FAA.

(35) This termination and attempt to gag plaintiff was solely
motivated by White and Hollar retaliatory amicus, and to protect
their frauds, breach of fiduciary responsibilities and violation
of federal laws and regulations.

(36) Plaintiff is at this time of this pleading is the sole
owner of the Company and has been assigned all rights tittle and
interest in monies owed the Company by White, Hollar and/or the
Hera entities, as well as plaintiff personally entitled to 1/3 of
all monies collected and/or paid to the Company, prior to White
and Hollar being removed from the Company.

(37) Plaintiff pursuant to agreement was entitled to 1/3 of all
monies collected, billed or otherwise owed to the Hera entities,
to date plaintiff was paid solely $10,000.00.

(38) Plaintiff was due 1/3 of a refund from Sheltair, when
hangar facilities the Company rented as a Hera entity for the

principal place of business for the Company and for which
plaintiff advanced $5,000.00.  Upon information and belief
Sheltair refunded the sum of $9,000.00, to which plaintiff was
entitled to a $3,000.00 or 1/3.

(39) In addition to the above, several aircraft were placed on
Sea to Sky Air, Inc's operation specifications to wit "D085" which
include and is not limited to N197MS and N306MS Piaggio Avanti
P180 II aircraft, N416GP, a Lear 60, 2 Citation X aircraft, 2
Hawker aircraft and one Falcon 50 aircraft, all these aircraft
conducted charter work, lease work or other flights and services
for compensation and or fees were paid to defendants.  White and
Hollar collected all these monies on behalf of the Company and
paid all such monies to various Hera entities, and/or White and
Hollar themselves.  Thereafter, White and Hollar distributed these
monies to themselves or others on their behalf to hide and conceal
these payments from plaintiff, and to "laundry" these monies and
hide them from plaintiff and/or distribute to plaintiff his share
of these monies.

(40) Because of White and Hollar's acts, the Owner of N416GP
removed his plane from the Sea to Sky FAA certificate and
accordingly Plaintiff and Sea to Sky lost revenue as a direct
result of White and Hollar's acts.  The amount of lost revenue is
unknown at this time as White and Hollar as otherwise referenced

herein have not provided any documents to plaintiff as requested, plaintiff believes the lost revenue amount to close to $700,000.00 for which plaintiff is entitled to 1/3 of such monies after aircraft related expenses.

(41) Additionally, White and Hollar conducted maintenance on the above aircrafts and collected monies entitled to the Company and thereafter to distribute to plaintiff and likewise concealed and/or laundry these monies to conceal and hide and fail to distribute such monies due `to plaintiff.

(42) White agreed on behalf of himself, Hollar and the Hera entities to pay plaintiff $2,000.00 per month as a fee to keep N197MS on the Company certificate, this payment was to be made May 15, 2019 (prorated for May 2019) and then thereafter until this aircraft was moved to another FAA certificate.  The aircraft was not moved to such other certificate until November 2019 and accordingly, White, Hollar and the Hera entities owed plaintiff. Accordingly, this fee owed plaintiff amounted to $13,000.00.

(43) Plaintiff was also entitled to 1/3 of %15 - %20 percent of all revenue generated by N197MS for this period and for the period of April 2018 until May 15, 2019, which is estimated at over $37,500.00.

(44) Hollar, White and the Hera entities also collected a

monthly management fee from April 2018 until May 15, 2019 for all
other aircraft that were operated by the Company and on the
Companies D085.    Likewise, in an amount of 1/3 of %15-%20 of the
gross charter revenue and of the monthly management fee, this
amount is estimated at over $75,000.00

(45) Plaintiff has repeatedly asked White and Hollar for an
accounting of all monies related to the management fee for all
these aircraft and accounting of all charter revenue.

(46)  White and Hollar have refused to provide such an accounting
or records.

(47) White and Hollar's dishonest acts and breaches herein also
caused 3 other aircraft to leave the Company certificate, to wit,
a Cessna Citation X, 2 Hawker 800 aircraft and the owner of a
Falcon 50 also pulled his aircraft from being placed on the Company
certificate, and all as a direct result of White and Hollar's acts,
and omissions.

(48)  The loss of the above referenced aircraft resulted in economic harm to
the Company and loss of revenues owed the Company and distributions
to Plaintiff.  The Citation X was paying a management fee of
%5,000.00 per month the 2 Hawker aircraft were paying $10,000.00
per month and the Falcon 50 would have paid $5,000.00 per month
plus %15 of gross billings.  And all in total of $360,000.00 per
year plus 15% of the falcon 50 gross revenue estimated at

$1,500,000.00 * 15% or $225,000.00 per year.


FIRST CAUSE OF ACTION
AGAINST ALL DEFENDANTS
BREACH OF CONTRACT, CONVERSION,
THEFT AND UNJUST ENRICHMENT


(49) Plaintiffs, repeat, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48 inclusive, with the same force and effect as though more fully set forth herein at length.

(50) There were two payments of $2,500.00 and one payment of $5,000.00 made to date by defendants, these payments however were credited to monies due plaintiff in respect of the aircraft owner of N416GP and for payment of oxygen masks for such aircraft, the balance of such payments still has not been paid.  There was also due plaintiff an initial repayment of $5,000.00, which has not been paid by defendants to plaintiff.

(51) White and Hollar upon information and belief made numerous distributions to themselves and were obligated to pay plaintiff matching distributions.  Plaintiff repeatedly asked for copies of all bank statements and records to see what distributions White and Hollar were making to themselves, and failing to match payments to plaintiff.

(52) Contemporaneously with the surrender of Sea to Sky to Plaintiff, plaintiff assigned his rights to White and Hollar in the Hera entities.

(53) White and Hollar failed to provide documents with respect to the Hera entities to Plaintiff and plaintiff is owed 1/3 of the profits and distributions by the Hera entities prior to his assigning his interest in the Hera entities back to White and Hollar.

(54) Demand has been made to White and Hollar and Hera for these defendants to meet their obligation and make payment to plaintiff and defendants refuse to make such payment to plaintiff of monies owed, and/or to provide an appropriate accounting of all monies.

(55) Defendants' Hera, White and Hollar, have refused to pay plaintiff monies owed him and/or to provide any accountings as demanded.

(56) As set forth above, and from on or about 04/08/18 and until on or about May 15, 2019, plaintiff is entitled to 1/3 of all revenue from the Company, and Hera, and in particular the 1/3 of the revenue collected from all aircraft listed above and any

and all maintenance and other services provided by Hera or the Company for such aircraft.

(57) As a result of defendant Hollar and Whites, acts, the Company lost revenue from the loss of aircraft to wit, N416GP, the Citation X, the 2 Hawkers, and the Falcon 50, and the company and plaintiff have been harmed by such intentional and wanton conduct of defendants' White and Hollar.

(58) Defendant Midsouth, was closely united with Hollar and White and benefited from the acts of White and Hollar, and was unjustly compensated by the acts of Hollar and White not sharing revenue from this defendants', aircraft.

(59) Plaintiff is entitled to monies collected by Midsouth pursuant to the lease agreement between Midsouth and the Company.


SECOND CAUSE OF ACTION
AGAINST DEFENDANTS
WHITE AND HOLLAR
BREACH OF FIDUCIARY DUTY

(60) Plaintiffs, repeat, reiterates, and realleges each and every allegation contained in paragraphs 1 through 57 inclusive, with the same force and effect as though more fully set forth herein at length.

(61) As of Jan 12, 2018, Plaintiff was the sole owner of Sea to Sky Air, Inc., and the director, president and registered agent.

As was plaintiff prior to this on Jul 5, 2017, *See* Exhibit A.

(62) On August 26, 2016, plaintiff was the president and registered agent of Sea to Sky Air, *See* Exhibit A.

(63) On 4/10/2019, plaintiff was removed to secretary of the corporation, White was made President and director, and Hollar made a VP and director.  The Skeen law firm was made registered agent and the Skeen law firm filed the papers effectuating this change. *See* Exhibit B.

(64) There was no notice to Plaintiff of such change nor action by the corporation and no board of directors meeting, nor any formal resolution made by the corporation.

(65) All this was done behind plaintiff's back and in retaliation for plaintiff siding with an aircraft owner, advising that plaintiff would investigate this and report violations and misrepresentations to the FAA.

(66) Mr. Garfield's lear 60 N416GP was removed from the Sea to Sky certificate because of bad conduct by defendants White and Hollar's as alleged by this aircraft owner.

(67) White and Hollar filed a lien against this aircraft under the name of the corporation which subjected the corporation to a lawsuit by this owner, except for plaintiff demanding White to remove the lien as there was no sound legal basis for the corporation to maintain such a lien, the company and plaintiff

would have been subjected to liability and suit by this owner.

(68) The lien filing and all actions taken by White and Hollar were without plaintiff's knowledge or consent, without any corporation board meeting or appropriate corporate evaluation, and all done to the detriment and without concern for the minority shareholder, plaintiff.

(69) Not only were these acts conducted by White and Hollar without plaintiff's knowledge, but same were acts taken in deference to the majority shareholder, plaintiff and intended solely to benefit the majority shareholders White and Hollar, whose separate maintenance company conducted the work and invoicing on such aircraft.
Such acts were retaliatory as plaintiff sided with this aircraft owner and voiced an opinion to inform the FAA of such conduct by White and Hollar.

(70) Likewise, such acts were conducted to benefit White and Hollar's financial interests solely and at the expense of the minority shareholder and a breach of a fiduciary duty owed such minority shareholder, under this closely held corporation.

(71) These acts by White, Hollar and the Skeen law firm were conducted to appease the FAA requests to prove both White and Hollar's ownership that was under question and investigation, and

conducted as a misrepresentation by the corporation, solely to mislead the FAA into believing that White and Hollar were directors of the corporation. Which in fact they were not at such time as no proper nomination or vote by the corporation was taken.

(72) Accordingly, such acts were a breach of such defendant's fiduciary duty and a fraudulent and unlawful filing and representations by such defendants, and all to the harm and detriment of the minority shareholder, plaintiff.

(73) White and Hollers bad acts as referenced herein cause the Company to lose planes as referenced above and accordingly the revenue from such aircraft, all to the detriment of Plaintiff and the Company, and plaintiff and the Company were damaged accordingly, directly from such acts of these defendants.

THIRD CAUSE OF ACTION
AGAINST DEFENDANTS
WHITE AND HOLLAR
RETALITORY TERMINATION

(74) Plaintiffs, repeat, reiterates, and realleges each and every allegation contained in paragraphs 1 through 73 inclusive, with the same force and effect as though more fully set forth herein at length.

(75) Title VII prohibits retaliation against employees who opposed any practice made unlawful by Title VII

Plaintiff engaged in a "Protected" activity under Title VII.

(76) Plaintiff's letter to the FAA and opposition to the company's falsification and misrepresentations to the FAA, falls well within Participation" in a protected activity.

Plaintiff's letter to the FAA and opposition to White and Hollar's falsification and misrepresentations to the FAA was also "Opposition" with respect to a protected activity.

(77) Plaintiff's participation in such protected activity was the reason for defendant's termination of employment and an adverse employment action by such defendants' and having a causal connection to the participation in the protected activity by plaintiff.

(78) There is Causation here to plaintiff's participation in a protected act and defendants' termination of plaintiff's employment.

(79) Defendants' have no legitimate, non-retaliatory reason for their decision to terminate plaintiff's employment and attempt to prevent plaintiff from speaking with the FAA.

(80) Here, "but for" plaintiff's participation in a protected activity, the adverse action would not have been taken by defendants.

(81) Defendants' were aware of plaintiff's participation in the protected activity prior to taking the action against plaintiff here.

(82) There are no Documented prior performance problems or unrelated instances of misconduct by plaintiff which would defeat a retaliation claim.

<u>TITLES/PARAGRAPH HEADINGS</u>
<u>OTHER CAUSES OF ACTION</u>

(83) Plaintiffs, repeat, reiterates, and realleges each and every allegation contained in paragraphs 1 through inclusive, with the same force and effect as though more fully set forth herein at length.

(84) Titles used herein are simply provided for an outline, and are not inclusive of all causes of action set forth within the confines of this pleading, and/or paragraphs contained thereunder.  Any valid cause of action enumerated within the ambit of the pleading shall be litigated as a cause of action at trial.

WHEREFORE, Plaintiff demands judgment against defendants as set forth below:

A. On Plaintiffs' FIRST CAUSE OF ACTION against all Defendants each severally and jointly in in compensatory damages in an amount not less than $750,000.00, or as otherwise determined by a jury;

B. On Plaintiffs' SECOND CAUSE OF ACTION against Defendants White and Hollar each severally and jointly in compensatory damages in an amount not less than $750,000.00, or as otherwise determined by a jury, and punitive damages if appropriate in an of $1,500,000.00 or in an amount set by a jury; and

C. On Plaintiffs' THIRD CAUSE OF ACTION against Defendants White and Hollar each severally and jointly in compensatory damages in an amount not less than $750,000.00, or as otherwise determined by a jury, and punitive damages in an amount of $1,500,000.00 or as otherwise set by a jury.

### _On all Causes of Action_

1.  Costs of this action;

2.  Prejudgment interest;

3.  Post-judgment interest;

4.  Reasonable Attorneys' fees; and

5.  For such further relief as the Court may deem just equitable.

DATED: 04/  /2020

Glenn B. Allyn
*Pro Se, Plaintiff*
67 Tower Road
Hangar T
West Harrison, New York 10604
(914) 437-5051
gba@flyingzebra.com

Plaintiff's certification and warnings form follows:

## ∴ PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 4/2/2020 | |
| **Dated** | **Plaintiff's Signature** |
| GLENN     B | ALLYN |
| **First Name**   **Middle Initial** | **Last Name** |
| 67 TANK ROAD | HANGERT |
| **Street Address** | |
| WEST HARRISON NY 10604 | |
| **County, City** **State** | **Zip Code** |
| 914 437 0051 | 96a @ flynet zospai.com |
| **Telephone Number** | **Email Address (if available)** |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**PROFIT CORPORATION ANNUAL REPORT**

99000074948                                                                          **FILED**
                                                                                  **Jan 12, 2018**
SEA TO SKY AIR, INC.                                                      **Secretary of State**
                                                                                 **CC1171131072**
rincipal Place of Business:

ST SAMPLE ROAD
12
CONUT CREEK, FL 07111

**Current Mailing Address:**

GALORE JETS
67 TOWER ROAD HANGER T
WHITE PLAINS, NY 10604 US

**FEI Number: 65-0942739**                                   **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

ALLYN, GLENN B
4400 WEST SAMPLE ROAD
SUITE 112
COCONUT CREEK, FL 07111 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:    **GLENN B ALLYN** _____

              Electronic Signature of Registered Agent                      01/12/2018
                                                                             Date

**Officer/Director Detail :**

| Title | PDS | | Title | PRESIDENT |
| Name | ALLYN, GLENN B | | Name | ALLYN, GLENN B |
| Address | 67 TOWER ROAD HANGAR T | | Address | GALORE JETS 67 TOWER ROAD HANGER T |
| City-State-Zip: | WHITE PLAINS NY 10523 | | City-State-Zip: | WHITE PLAINS NY 10604 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: GLENN B ALLYN _____    OWNER              01/12/2018

              Electronic Signature of Signing Officer/Director Detail                 Date

# FIT CORPORATION ANNUAL REPORT

J0074948

⌐ TO SKY AIR, INC.

A

⌐pal Place of Business:

⌐IPLE ROAD

⌐ CREEK, FL 07111

⌐rent Mailing Address:

⌐ALORE JETS
67 TOWER ROAD HANGER T
WHITE PLAINS, NY 10604 US

**FEI Number: 65-0942739**

**Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

ALLYN, GLENN B
4400 WEST SAMPLE ROAD
SUITE 112
COCONUT CREEK, FL 07111 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: **GLENN B ALLYN**

| | 07/05/2017 |
|---|---|
| Electronic Signature of Registered Agent | Date |

**Officer/Director Detail :**

| Title | PDS | | Title | PRESIDENT |
|---|---|---|---|---|
| Name | ALLYN, GLENN B | | Name | ALLYN, GLENN B |
| Address | 67 TOWER ROAD HANGAR T | | Address | GALORE JETS 67 TOWER ROAD HANGER T |
| y-State-Zip: | WHITE PLAINS NY 10523 | | City-State-Zip: | WHITE PLAINS NY 10604 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: GLENN B ALLYN

| | DIRECTOR OWNER | 07/05/2017 |
|---|---|---|
| Electronic Signature of Signing Officer/Director Detail | | Date |

## PROFIT CORPORATION ANNUAL REPORT

P99000074948

e: SEA TO SKY AIR, INC.

**FILED
Apr 10, 2019
Secretary of State
3694026075CC**

Principal Place of Business:

ıW 2ND AVENUE
. ſE 200
ОCA RATON, FL 33431-6674

**Current Mailing Address:**

3301 NW 2ND AVENUE
SUITE 200
BOCA RATON, FL 33431-6674 US

**FEI Number: 65-0942739**

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

THE SKEEN LAW GROUP, P.A.
2450 HOLLYWOOD BLVD.
SUITE 105
HOLLYWOOD, FL 33020 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:    RICHARD L. SKEEN

04/10/2019

_____
Electronic Signature of Registered Agent                                     Date

**Officer/Director Detail :**

| | | | | |
|---|---|---|---|---|
| Title | PRESIDENT, DIRECTOR | | Title | SECRETARY |
| Name | WHITE, CHARLES | | Name | ALLYN, GLENN B |
| Address | 3301 NW 2ND AVENUE<br>SUITE 200 | | Address | GALORE JETS<br>67 TOWER ROAD HANGER T |
| City-State-Zip: | BOCA RATON FL 33431-6674 | | City-State-Zip: | WHITE PLAINS NY 10604 |

| | |
|---|---|
| Title | VP, DIRECTOR |
| Name | HOLLAR, JONATHAN |
| Address | 3301 NW 2ND AVENUE<br>SUITE 200 |
| City-State-Zip: | BOCA RATON FL 33431-6674 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: RICHARD SKEEN, ESQ FOR CHARLES WHITE          PRESIDENT          04/10/2019

_____
Electronic Signature of Signing Officer/Director Detail                            Date





G JETS, INTL

```
G Jets, Intl.
67 Tower Road, Hangar T
White Plains, NY 10604
(914) 437-5051 -Facsimile (914) 831-9653
```

MAY 2, 2019

BY: E-MAIL
james.r.piccoli@faa.gov
TRACEY.L.EGAN@FAA.GOV

_**RE: Sea to Sky Air, Inc.**_

Dear Inspectors Piccoli and Egan:

As you are aware, or may be aware, I am an owner of Sea to Sky Air, Inc., and the direct purchaser of the corporate entity from its prior owner Lance Letchworth.

Chuck White and Jonathan Hollar had an agreement with me whereby they were made 1/3 owners each subject to payment of monies spent by me in getting the underlying certificate into compliance after Mr. Letchworth no longer had aircraft on the certificate and had other issues whereby the certificate was in jeopardy of being revoked.

I worked diligently with inspector Piccoli to cure any discrepancies and get the certificate current and with at a minimum one committed aircraft.

Mr. White and Mr. Hollar have defaulted under the terms of any such transfer, and accordingly they now have no ownership interest in the corporation and its certificate.

The recent events, arising from inspector Egan's appointment as our PMI, are also troubling to me. It seems that both Mr. White and Hollar may have filled certain information ⁄ith the Florida Department of corporations to try to satisfy your offices request for ownership ⁿfirmation, all with out my knowledge or consent as an owner.





**G JETS, INTL**

I am also concerned about the rate of growth in adding aircraft to my certificate and the diversity of aircraft without a real plan for standardization, this represents a safety concern to me, which I do not want to be involved with any liability in case of an aircraft mishap.

I have spoke to one of the prior lear jet owners, who had an aircraft on our certificate and the handling of that aircraft by Mr. White and Hollar without my knowledge as an owner also troubles me.

Accordingly, I request a meeting with both of you in order to discuss, the removal of existing aircraft. The addition of one PC-12 aircraft and the transfer of the certificate to the Atlanta, GA FSDO.

I will be basing the certificate in Atlanta GA, and will have formal offices there and an aircraft based there.

At this time, I will be requesting both Mr. White and Hollar to refrain from conducting any further part 135 activities until I have an opportunity to meet with you.

I will also be termination our director of operations and I will replace him as the director of operations, which I am qualified for and previously held.

I will also propose new Chief Pilot and director of maintenance candidates.

Obviously, from a legal standpoint, since there was no consideration paid for the transfer of shares to Mr. White and Mr. Hollar there is no legal issue regarding ownership.

However, if required I will formally prepare a statement with exhibits for the FAA legal departments review.

Respectfully;





G JETS, INTL

Glenn B. Allyn/Owner Sea to Sky Air, Inc.

llyn

|          | Glenn B Allyn <gba1@bestweb.net> |
|----------|----------------------------------|
|          | Friday, May 3, 2019 5:15 PM |
| **To:**  | gba1@bestweb.net |
| **Subject:** | Fwd: Sea to Sky Air, Inc. |
| **Attachments:** | Untitled attachment 00252.htm; Hera- Sea to Sky Air- Termination of Employment & Exhibits (2019.05.02).pdf |

Good afternoon,

Please see the attached legal correspondence from Mr. Skeen.

Please feel free to contact our office should you have any questions or concerns.

Sincerely,

Ariel Pierce, J.D.



The Skeen Law Group, P.A.
450 Hollywood Blvd.
Suite 105
Hollywood, Florida 33020
-------------------------------
Phone (954) 300-1529
Fax: (954) 374-9841

Email: legalassistant@skeenlawoffice.com
Web: http://www.skeenlawoffice.com

The information in this email transmission is privileged and confidential. If you are not the intended recipient, nor the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this transmission (including any attachments) is strictly prohibited. If you have received this email in error, please notify the sender by email reply. Thank you.

# THE SKEEN LAW GROUP P.A.

OFFICES:
2450 HOLLYWOOD BLVD.
SUITE 105
HOLLYWOOD, FLORIDA 33020
PHONE: (954) 300-1529
FAX: (954) 374-9841



WWW.SKEENLAWGROUP.COM

LICENSED: OHIO AND FLORIDA
REPLY TO:
RICHARD@SKEENLAWOFFICE.COM
2450 HOLLYWOOD BOULEVARD
SUITE 105
HOLLYWOOD, FLORIDA 33020

**May 2, 2019**

*VIA U.S. Email : "Glenn B. Allyn" gba1@bestweb.net and US Priority Mail#9405503699300495311086*
G Jets, Intl.
Attention Glenn B. Allyn:
67 Tower Road, Hangar T
White Plains, NY 10604

**Re: Termination of Employment and as an Officer of Sea to Sky Air, Inc. (STSA)**

As you are aware, the office of the undersigned is general corporate counsel for Sea to Sky Air, Inc. (hereinafter "STSA" or "the Company"). The undersigned has recently been directed by the President and Directors of STSA inform you that effective immediately you been terminated and removed from all employment and offices with the Company. As such you no longer have any authority to act on behalf of STSA.  I have enclosed a copy of the recent resolutions of the shareholders and directors taking such action pursuant to the Florida Business Corporations Act as Composite Exhibit "A". This letter shall serve as notice required by Section 607.0704 Florida Statues of Action by shareholders without a meeting.

As I am sure you are aware a majority of the shareholders is required appoint directors of the Company and a majority of those duly appointed directors are required to appoint and/or remove officers of the Company. The enclosed shareholders and directors' resolutions were passed by majority of the Company's shareholders and by the unanimous consent of the directors.  I will remind you that that fact that you own 33 1/3% of the shares of the Company does not entitle you to exercise any dominion or control over the affairs or actions of the Company.  You are hereby put on notice that you do not have any authority to bind or otherwise act on behalf of the Company.

In addition, I would like to address certain conduct which you have recently demonstrated (some of which being particularly disturbing). That conduct is detailed below:

1. You have repeatedly delayed and denied requests for corporate documentation.
2. On numerous occasions over the past eight or so months you have repeatedly threatened to sabotage the Company and/or shut down the Company.
3. On May 2, 2019, without any authorization, you sent an e-mail to STSA employees requesting copies of Operational Specifications and Manuals.
4. In addition to the foregoing, you recently sent various emails and text messages to the President another STSA employees wherein you directly represented that you were going to shut own STSA.
5. Finally it appears you apparently decided to follow through on your threat to "shut down" Company, as on May 2, 2019 you drafted letter to the Federal Aviation Administration (FAA)

with no prior authorization or authority to do so. A copy of the unauthorized letter is attached hereto as Exhibit "B". You are hereby instructed not to send said letter to the FAA. If you have already sent said letter you are instructed to immediately issue a retraction.

Your conduct has demonstrated a complete lack of loyalty to the Company, and a gross breach of your fiduciary duties you owed to the Company. As such, your employment with STSA is hereby terminated, effective immediately. Furthermore, you are hereby terminated, effective immediately, from all prior positions you occupied as an Officer or Director of STSA.

Demand is hereby made for you to return all Company property in your possession immediately. That demand specifically includes but is not limited to the following:  1) All keys which you possess for the corporate facilities; 2) All corporate property in your possession, including but not limited to: a) records of any and every type; b) all originals, non-identical copies and drafts of the following items, whether printed, handwritten, typed, recorded, or stored on any electric-magnetic storage device, or reproduced by hand, including, but not limited to: all correspondence, memoranda, invoices, receipts, records, e-mails, ledger cards or other accounting records, voucher, check, orders, diary, calendar, instruction, summaries of personal conversations or interviews, minutes or records of meetings or conferences, transcripts, opinions or reports of consultants, projections, drafts, contracts, agreements, confirmations, statistical statements, studies, telegrams, telexes, books, notes, reports, logs, diaries, tape recordings, video cassettes and date compilations from which information can be obtained, charts, photographs, notebooks, drawings, plans, printed materials of any kind, charts and interoffice communications, and any other writing of whatever description, including but not limited to, any information contained in any computer, or represented by a computer program, signed or unsigned, regardless of whether approved, signed, sent, received, redrafted, or executed, study, work paper, handwritten note, draft, demand, chart, paper, print, laboratory record, drawing sketch, diagram, form, graph, index, list, tape, photograph, microfilm, data sheet, data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced and reproduced, and that pertains to STSA , Inc.'s operation of its business.

**Finally, you are hereby directed to cease and desist any conduct whereby you hold yourself out to the public as employed by, or affiliated with, STSA. This specifically includes any contact with STSA customers, employees or the FAA about STSA or its operations.**

Please be advised that should you fail to comply with the foregoing, appropriate legal proceedings will be initiated. You may contact the undersigned directly to coordinate your turnover of all corporate property in your possession.

GOVERN YOURSELF ACCORDINGLY

Sincerely,

Richard L. Skeen, Esquire

## RESOLUTION OF THE SHAREHOLDERS AND DIRECTORS
## OF SEA TO SKY AIR, INC.
### (A Florida Corporation)

Pursuant to Florida Statutes 607.0101, et. seq., the "Florida Business Corporation Act", the undersigned being all of the Directors of Sea to Sky Air, Inc., a Florida Corporation (hereinafter the "Company"), hereby consent as follows:

RESOLVED, that the Directors hereby remove GLENN ALLYN from the office a President of The Company.

FURTHER RESOLVED, that the Directors hereby appoint CHARLES WHITE to the office a President of The Company.

FURTHER RESOLVED, that the Directors hereby appoint JONATHAN HOLLAR to the office a Vice President of the Company.

FURTHER RESOLVED, that the Directors hereby appoint GLENN ALLYN to the office a Secretary of The Company.

FURTHER RESOLVED, that the Directors hereby ratify the filing of the Annual Report of the Company with the Florida Department of State, by the authorized representative.

FURTHER RESOLVED, that the President, Vice President and Directors of the Company be and are authorized to take all future actions necessary to carry out the actions contemplated by these Resolutions and to carry out the business of The Company.

FURTHER RESOLVED, that the President, Vice President and Directors be, and hereby are, authorized to take all such further action and to execute, deliver, file and record as appropriate all such further instruments and documents, in the name and on behalf of the Company, under seal or otherwise, as they in their judgment shall deem necessary or convenient to carry out the intent and to accomplish the purposes of these Resolutions.

IN WITNESS WHEREOF, the Shareholders and Directors place their hands and seals upon this instrument on this 25th day of ___APRIL___, 2019.

DIRECTOR:

CHARLES WHITE

DIRECTOR:

JONATHAN HOLLAR

## RESOLUTION OF THE SHAREHOLDERS
## OF SEA TO SKY AIR, INC.
### (A Florida Corporation)

Pursuant to Florida Statutes 607.0101, et. seq., the "Florida Business Corporation Act", the undersigned Shareholders, holding a majority of the votes of the Shareholders of Sea to Sky Air, Inc., a Florida Corporation (hereinafter the "Company"), hereby consent as follows:

RESOLVED, that the Shareholders hereby remove GLENN ALLYN as a Director of The Company.

FURTHER RESOLVED, that the Shareholders hereby elect the following Directors:

CHARLES WHITE              Director
JONATHAN HOLLAR            Director

FURTHER RESOLVED, that the Shareholders hereby ratify the filing of the Annual Report of The Company and authorize the filing of an Amended Annual report of the Company with the Florida Department of State, by the authorized representative as necessary to implement the actions contemplated by this resolution.

FURTHER RESOLVED, that the Directors of the Company be and are authorized to take all future actions necessary to carry out the actions contemplated by these Resolutions and to carry out the business of The Company.

FURTHER RESOLVED, that the Directors be, and hereby are, authorized to take all such further action and to execute, deliver, file and record as appropriate all such further instruments and documents, in the name and on behalf of The Company, under seal or otherwise, as they in their judgment shall deem necessary or convenient to carry out the intent and to accomplish the purposes of these Resolutions.

IN WITNESS WHEREOF, the Shareholders and Directors place their hands and seals upon this instrument on this 25th day of _____APRIL_____, 2019.

SHAREHOLDER (33 1/3%):

_____
CHARLES WHITE

SHAREHOLDER (33 1/3%):

_____
JONATHAN HOLLAR

## RESOLUTION OF THE SHAREHOLDERS AND DIRECTORS
## OF SEA TO SKY AIR, INC.
### (A Florida Corporation)

Pursuant to Florida Statutes 607.0101, et. seq., the "Florida Business Corporation Act", the undersigned being all of the Directors of Sea to Sky Air, Inc., a Florida Corporation (hereinafter the "Company"), hereby consent as follows:

RESOLVED, that the Directors hereby remove GLENN ALLYN from the office a Secretary of The Company.

FURTHER RESOLVED, that the Shareholders and Directors hereby terminate GLENN ALLYN from all employment, offices and other positions held with the Company and GLENN ALLYN shall henceforth no longer have authority to act on behalf of or otherwise bind the Company.

FURTHER RESOLVED, that the Directors hereby authorize the authorized representative to file an amended Annual Report of the Company with the Florida Department of State reflecting the above resolutions.

FURTHER RESOLVED, that the President, Vice President and Directors of the Company be and are authorized to take all future actions necessary to carry out the actions contemplated by these Resolutions and to carry out the business of The Company.

FURTHER RESOLVED, that the President, Vice President and Directors be, and hereby are, authorized to take all such further action and to execute, deliver, file and record as appropriate all such further instruments and documents, in the name and on behalf of the Company, under seal or otherwise, as they in their judgment shall deem necessary or convenient to carry out the intent and to accomplish the purposes of these Resolutions.

IN WITNESS WHEREOF, the Shareholders and Directors place their hands and seals upon this instrument on this 29th day of _____APRIL_____, 20_19_.

DIRECTOR:

CHARLES WHITE

DIRECTOR:

JONATHAN HOLLAR

## RESOLUTION OF THE SHAREHOLDERS AND DIRECTORS
## OF SEA TO SKY AIR, INC.
### (A Florida Corporation)

;uant to Florida Statutes 607.0101, et. seq., the "Florida Business Corporation Act", the
being all of the Directors of Sea to Sky Air, Inc., a Florida Corporation (hereinafter the
i, hereby consent as follows:

OLVED, that the Directors hereby remove GLENN ALLYN from the office a Secretary of The


THER RESOLVED, that the Shareholders and Directors hereby terminate GLENN ALLYN
ployment, offices and other positions held with the Company and GLENN ALLYN shall
o longer have authority to act on behalf of or otherwise bind the Company.

THER RESOLVED, that the Directors hereby authorize the authorized representative to file an
mual Report of the Company with the Florida Department of State reflecting the above

THER RESOLVED, that the President, Vice President and Directors of the Company be and are
take all future actions necessary to carry out the actions contemplated by these Resolutions and
ie business of The Company:

THER RESOLVED, that the President, Vice President and Directors be, and hereby are,
take all such further action and to execute, deliver, file and record as appropriate all such
nents and documents, in the name and on behalf of the Company, under seal or otherwise, as
judgment shall deem necessary or convenient to carry out the intent and to accomplish the
iese Resolutions.

TTNESS WHEREOF, the Shareholders and Directors place their hands and seals upon this
this 29th day of _____APRIL_____ , 2019 .

DIRECTOR:

CHARLES WHITE

DIRECTOR:

JONATHAN HOLLAR